**FORKED DEER ELECTRIC COOPERATIVE, INC.,**
Plaintiff–Appellant,

v.

The **CITY OF RIPLEY, Tennessee and its Mayor, Rozell Criner, and Aldermen, L.W. Poston, Jr., Tommy Dunavant, Jon Pavletic, Richard Douglas, Charlie Moore, and Pete Lawrence; Ripley Power and Light Company and its directors, Jim Sealey, Tommy Dunavant, and Samuel C. Lee; the Town of Halls, Tennessee, and its Mayor, Randall Harris, and Aldermen, Eugene Pugh, Stan Young, Mack Stanley, Barry Britt, Noel Sherrod, and James Tyus; James Lowery and wife, Iris Lowery, Defendants–Appellees.**

Supreme Court of Tennessee,
at Nashville.

Aug. 22, 1994.

Clark H. Tidwell and William T. Cheek, III, Lassiter, Tidwell, & Trentham, Nashville, for plaintiff-appellant.

Frank S. King, Jr., King & Ballow, Nashville, for defendants-appellees.

## OPINION

DROWOTA, Justice.

Pursuant to Rule 23 of the Rules of the Tennessee Supreme Court, the United States Court of Appeals for the Sixth Circuit has certified the following question to this Court:

Was it appropriate for the trial court to modify the compensation formula contained in Tenn.Code Ann. § 6–51–112(a)(2), when determining just compensation for the "taking" of an electric cooperative by a municipality?

This Court has accepted certification under the provisions of Rule 23.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Forked Deer Electric Cooperative (Forked Deer), is an electric cooperative authorized by the Rural Electric and Community Services Cooperative Act, Tenn. Code Ann. § 65–25–201. The defendant, Town of Halls, Tennessee, (Halls) is a municipality which has the option of establishing an electric service or granting a franchise to provide electric services to its citizens. *Electric Power Board v. Middle Tennessee Elec. Membership Corp.*, 841 S.W.2d 321, 322 (Tenn.App.1992).

In 1938, Halls granted the City of Ripley and Ripley Power and Light (Ripley), a thirty year non-exclusive franchise to furnish electric power within Halls' corporate limits. The original franchise was subsequently renewed in 1968 for a twenty year period. During the period of the original and renewed agreements, Halls annexed additional areas, including some areas served by Forked Deer. Because the franchise agreements between Halls and Ripley were non-exclusive, Forked Deer continued to serve its member customers living in the annexed areas. In 1988, when the renewed non-exclusive franchise was about to expire, Halls informed Ripley and Forked Deer that it intended to award an exclusive franchise for the delivery of power within its corporate limits. After both entities submitted information and a public hearing was held, Halls chose Ripley over Forked Deer as the recipient of the exclusive franchise. Ripley then attempted to purchase Forked Deer's facilities, offering to pay Forked Deer the original installation cost of the facilities less depreciation; however, Forked Deer refused to sell on those terms.

After negotiations for the sale of Forked Deer's facilities became deadlocked, Forked Deer commenced the present lawsuit in the United States District Court for the Western District of Tennessee in October 1989, asserting that Halls and Ripley acted anticompetitively under the federal and state antitrust statutes; that Halls and Ripley violated Tenn.Code Ann. § 47–50–109 by inducing member-customers to breach their contracts with Forked Deer; and that the exclusive franchise awarded to Ripley constituted a "taking" of Forked Deer's property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Because a dispute arose over Ripley's right under the franchise to

remove Forked Deer's equipment and replace it with its own equipment, on November 2, 1989, the district court issued a temporary injunction prohibiting Ripley from interfering with Forked Deer's equipment and service to its customers.

All parties filed motions for summary judgment in December 1989. On June 2, 1992, the district court granted summary judgment to the defendants on all of Forked Deer's claims except for the Fifth Amendment taking claim. On the taking claim, the district court held that because Halls' grant of the exclusive franchise to Ripley had "taken away Forked Deer's right to serve its members without formal condemnation proceeding[s]," such action was in the nature of an inverse condemnation, and therefore constituted a taking under the Fifth Amendment. After dissolving the injunctive relief previously granted to Forked Deer, the trial court then proceeded to determine the compensation for the taking of Forked Deer's property and revenue.

In calculating the compensation owed to Forked Deer, the district court applied the formula set out in Tenn.Code Ann. § 6–51–112(a)(2). The Court, however, modified its damage award on the ground that Forked Deer "made a determined effort to defeat the right of Ripley to benefit from its exclusive franchise for customers living in Halls" and continued, after the exclusive franchise was granted, to receive revenue from customers within Halls' corporate boundaries for at least four years. The Court determined that Halls and Ripley would be "forgiven from paying the annual payments based upon 25% of the residential and commercial revenues and 50% of the industrial revenues for that portion of the ten-year period which commenced January 1, 1989 [the effective date of the exclusive franchise agreement between Halls and Ripley] and ends when the property of Forked Deer is transferred as hereinbefore specified." The district court determined that Halls would pay Forked Deer a pro rata share of the annual payment for 1993 plus full annual payments for 1994 through 1998 (6 annual payments), instead of the ten annual payments provided for in Tenn.Code Ann. § 6–51–112(a)(2)(C). The

modification reduced the amount of compensation awarded from $910,272.50 to $606,959.94. Forked Deer appealed to the Sixth Circuit Court of Appeals, challenging only the district court's calculation of the compensation.

## ANALYSIS

The answer to the question posed by the Sixth Circuit requires an examination of two sources of our state's law, one statutory and the other decisional, and those sources' application to this case. The first crucial source is Tenn.Code Ann. § 6–51–112(a), which provides, in pertinent part:

Notwithstanding the provisions of any other statute, if the annexing municipality owns and operates its own electric system, it shall either offer to purchase any electric distribution properties and service rights within the annexed area owned by any electric cooperative, or grant such cooperative a franchise to serve the annexed area, as hereinafter provided:

(1) The municipality shall notify the affected electric cooperative in writing of the boundaries of the annexed area and shall indicate such area on appropriate maps;

(2) The municipality shall offer to purchase the electric distribution properties of the cooperative located within the annexed area, together with all the cooperative's rights to serve within such area, for a cash consideration that shall consist of:

(A) The present-day reproduction cost, new, of the facilities being acquired, less cost of depreciation computed on a straight line basis; plus

(B) An amount equal to the cost of constructing any necessary facilities to reintegrate the system of the cooperative outside the annexed area after detaching the portion to be sold; plus

(C) An annual amount, payable each year for a period of ten (10) years, equal to the sum of:

(i) Twenty-five percent (25%) of the revenues received from power sales to consumers of electric power within the annexed area, except consumers with large industrial power loads greater than three hundred (300) kilowatts, during the last twelve (12)

months preceding the date of the notice provided for in subdivision (a)(1); and

(ii) Fifty percent (50%) of the net revenues (gross power sales revenues less wholesale cost of power including facilities rental charge) received from power sales to customers with large industrial power loads greater than three hundred (300) kilowatts within the annexed area during the last twelve months preceding the date of notice provided for in subdivision (a)(1)[.]

Despite the comprehensiveness of this compensation formula, it does not literally apply to this case because: (1) the exclusive franchise granted to Ripley was not conferred as part of a formal process of annexation by Halls (the annexation in this case occurred at some time before the franchise was granted); and (2) because Halls unquestionably does not "own or operate its own electric system," but instead has contracted with another entity to provide electricity. Notwithstanding this fact, our decision in *Duck River Elec. Membership Corp. v. City of Manchester*, 529 S.W.2d 202 (Tenn.1975) clearly sanctions the district court's reliance on that section for purposes of determining damages.

In *Duck River*, the City of Manchester filed an action against the electric cooperative, seeking to condemn certain property of the cooperative within Manchester's corporate boundaries. After surveying the applicable statutory and decisional law pertaining to municipal corporations, we concluded that a municipality has the exclusive power to control the distribution of electric power within its boundaries. Therefore, we held that Manchester possessed the authority to condemn the property, provided that it paid just compensation as provided by Article I, § 21 of the Tennessee Constitution to the cooperative.

In determining the proper measure of damages, we first rejected the trial court's holding that the damages were to be assessed with reference to the general condemnation statutes. Noting that these statutes referred only to real property, we dismissed the traditional methods of damage calculation embodied in the statutes as "ludicrously inapplicable," 529 S.W.2d at 207, to the situation

at hand. After acknowledging that the determination of damages is essentially a judicial and not a legislative function, we nevertheless turned to the compensation procedure set forth in Tenn.Code Ann. § 6–320, the predecessor to § 6–51–112(a)(2), for guidance in our independent determination of the proper measure of damages. We approved this compensation scheme for purposes of the case at hand, stating as follows:

> The Legislature has arrived at a formula or method for determining the fair market value or just compensation to be paid the owner in these cases involving the acquisition of public entities.
>
> ... [text of statute]
>
> We hold this to be a *fair and equitable method* of determining just compensation as mandated by our constitution.
>
> In arriving at this conclusion we have not found it necessary to determine whether the City of Manchester is an "annexing municipality" within the meaning of § 6–320 and we have not overlooked the fact that Manchester does not presently own or operate its own electric system. In our view these are not controlling considerations. We are motivated by the fact that the legislature has found and determined this to be a proper manner for determining "just compensation" or "fair market value." We cannot bring ourselves to believe that the legislature would allow one measure of compensation for annexed utilities and another for those acquired by condemnation. Nor would we.
>
> * * * * *
>
> This case is reversed and remanded with instructions to the trial court to try the issues as if this were an inverse condemnation suit, applying the measure of damages as above delineated.

(Emphasis added).

Forked Deer contends that *Duck River* mandates that the damages in *any* case involving the inverse condemnation of a electric cooperative be determined according to the formula set forth in § 6–51–112(a)(2). Therefore, it says, the district court erred when it relieved Ripley of responsibility for the payments required by Tenn.Code Ann.

§ 6–51–(a)(2)(C) for a period of over four years.

We believe that Forked Deer reads too much into the *Duck River* decision. Although we looked to the predecessor to § 6–51–112(a)(2) for guidance in determining damages in *Duck River,* we also made it clear that the determination of damages is normally a judicial, not a legislative, function. Therefore, we were not applying the predecessor to § 6–51–112(a)(2) because of its status as a binding piece of legislation promulgated by the General Assembly; on the contrary, we explicitly acknowledged that such an application was impossible because the statute did not fit the facts of the case before us. Our reliance on the statutory scheme was thus entirely based on our *agreement* with the legislature's pronouncement in the context of the facts before us in *Duck River.* This discretionary type of decisionmaking is diametrically opposed to the conventional type, in which a court must apply the statute to a particular set of facts, regardless of the court's opinion as to the merits of the statute. *See Memphis Pub. Co. v. Holt,* 710 S.W.2d 513, 516 (Tenn.1986); *Nashville v. Motel Systems, Inc.,* 525 S.W.2d 840, 841 (Tenn. 1975).

 The conclusion to be drawn from this discussion is that the statutory scheme enunciated in § 6–51–112(a)(2) is not the exclusive means of determining damages in *every* action concerning the inverse condemnation of an electric cooperative. It was the proper means in *Duck River* because that case presented no considerations militating against the unqualified usage of the detailed legislative compensation scheme; in other words, the invocation of the statutory formula in that case produced a "fair and equitable" measure of damages. However, in a different case complete reliance on the statutory scheme may not produce "fair and equitable" results; and a trial court, although it certainly may not ignore the § 6–51–112(a)(2) scheme, has some discretion to modify the formula where the equities of the case dictate.

In so holding, we do not wish to be understood as approving the specific determination of damages made by the district court in this case. We hold only that Tennessee law does not require that damages in every inverse condemnation case involving an electric cooperative be determined according to the statutory scheme in § 6–51–112(a)(2).

### CONCLUSION

We answer the question certified to us by the United States Court of Appeals for the Sixth Circuit as follows:

Was it appropriate for the district court to modify the statutory compensation formula contained in Tenn.Code Ann. § 6–51–112(a)(2) when determining just compensation for the taking of an electric cooperative by a municipality? It was not per se inappropriate.

REID, C.J., and O'BRIEN, ANDERSON and BIRCH, JJ., concur.