H. N. HARPER and wife, CLEDIE B. HARPER, Petitioners, v. TRENTON HOUSING ANTHORITY, Respondent.

FINIS C. HARPER and wife, NELL HARPER, Petitioners, v. TRENTON HOUSING AUTHORITY, Respondent.

JOE W. STOCKTON and wife, WANETA STOCKTON, Petitioners, v. TRENTON HOUSING AUTHORITY, Respondent.—274 S. W. (2d) 635.

Western Division at Jackson. October 7, 1953.

Rehearing denied September 6, 1954.

Petition for Certiorari denied by Supreme Court, November 16, 1954.

Adams & Adams, of Humboldt, L. L. Harrell, John C. Nowell, Jr., both of Trenton, for petitioners.

Gayle Malone, Holmes & Holmes, all of Trenton, for respondent, Trenton Housing Authority.

CARNEY, J. These three condemnation cases were consolidated and have been before this Court previously on writs of certiorari and supersedeas.

On October 7, 1953, this Court rendered an opinion adversely to the petitioning landowners insofar as their contention and Assignment of Error that the Trenton Housing Authority was without legal authority to condemn their property and that the Trenton Housing Authority and its officials had been guilty of a palpable abuse of discretion in determining to condemn the three parcels of land described in the pleadings and belonging to the petitioners.

This Court in said opinion further decided favorably to the Assignment of Error of the petitioners to the effect that an order entered of record by the Trial Judge of the Circuit Court of Gibson County, of date March 7, 1953, was ineffective because entered out of term time and without notice to attorneys for the petitioning landowners.

This order of date March 7, 1953, purported to overrule the exception of the plaintiff, Trenton Housing Authority, to the report of the jury of view; confirmed the report of the jury of view; granted an appeal on the question of damages to the next term of Circuit Court; and finally adjudged the Trenton Housing Authority to own and hold the land sought to be condemned upon condition that the Housing Authority give proper bond in double the amount of the assessment by the jury of

inquest, and conditioned to abide by and perform the final judgment in the premises.

After the entry of our opinion of date October 7, 1953, and judgment thereon, the landowners filed petition for certiorari and supersedeas to the Supreme Court of Tennessee. The Petition for Certiorari was denied and first and second Petitions to Rehear the Petition for Certiorari were filed with the Supreme Court.

In a memorandum by Mr. Justice Tomlinson, Tenn., 271 S. W. (2d) 185 denying the Petition for Certiorari on the Second Petition to Rehear, it was stated that the Court of Appeals had been premature in deciding the right of the Trenton Housing Authority to condemn the lands in question, even though both parties asked for an adjudication on said question in order to obtain an early disposition of the matter. The Supreme Court was of the opinion that since this Court had determined that there had been no validly entered order vesting and divesting title under the condemnation proceedings in the Circuit Court, this Court should have simply remanded the cause to the Circuit Court of Gibson County for further proceedings therein.

The Supreme Court in its memorandum further stated that if and when these cases should again come to the Court of Appeals, this Court should consider the same as if no prior decisions on the right to take had been made.

Accordingly, the cause was remanded to the Circuit Court of Gibson County and orders purporting to vest and divest title to the land sought to be condemned have been entered.

Under the authority of Tennessee Central R. R. Co. v. Campbell, 109 Tenn. 640, 75 S. W. 1012, Presiding Justice Avery of this Court granted writs of certiorari and supersedeas on petition of the landowners.

The record in the Court below has been filed in this Court, along with Assignments of Error and Brief of the petitioners and the Reply Brief of the respondents, and we now have the cases for decision.

These three condemnation cases were consolidated and heard together, as they involve contiguous property, and the three parcels of real estate actually constitute one lot, containing 3.03 acres. The Trenton Housing Authority, of Trenton, Tennessee, was incorporated under the Housing Authorities Law, Section 3647.1 et seq. of the Code of Tennessee. The Housing Authority decided to construct two new housing projects for the Town of Trenton, Tennessee.

One project is known as Tennessee Project 25-1 and provides for the construction of forty housing units for white occupants, and another project called Tennessee Project 25-2 contemplates the construction of a housing project to house thirty-two low income Negro families in Trenton, Tennessee. Negotiations for private purchase failed, and it became necessary for the Housing Authority to institute condemnation proceedings to obtain the necessary real estate upon which to erect each project.

It is sought in these three cases to condemn the 3.03 acre tract of land owned by the three defendants, H. N. Harper et ux., Finis C. Harper et ux., and Joe W. Stockton et ux., for the erection of Tennessee Project 25-2 to be occupied by thirty-two Negro families of the low income bracket. The suits were filed on November 3, 1952, by the Housing Authority against the respective owners of said three tracts of land alleging that because of the location, size, shape, and topography, the Trenton Housing Authority has found and has been instructed to use

the particular real estate sought to be condemned in the public interest of economy, convenience, and use, and praying for juries of view, divestiture of title, etc.

The defendant property owners, all of whom are white, vigorously objected to the condemnation of the property and the erection of the Negro housing project on the particular tract of land sought to be condemned for the main reason that they felt that the placing of this housing project on this particular plot of ground would cause a great depreciation in value of the other property in the neighborhood owned by these defendants and other white people, and they were strongly joined in these objections by other citizens of the particular neighborhood and the Town of Trenton.

The legal defenses filed by these defendants to the petition of condemnation were:

(1) That it was not in the public interest and welfare that the property be condemned;

(2) That it was not necessary to the public interest, economy and convenience that this particular property be condemned and used as a Negro housing project.

(3) Defendants are advised and therefore charge that the petitioner has not sought to remedy the alleged unsanitary and unsafe dwelling accommodations or conditions by ordinary operations of private enterprise; that the petitioner has no plan for clearance, replanning, or reconstruction of any blighted or unsanitary or unsafe housing conditions, but seeks the property described in the petition, together with other property, which is vacant property, without any housing located thereon; that it is the declared purpose of the Act of the Legislature under which the petitioner seeks to act, that overcrowded, congested, unsafe or unsanitary dwelling ac-

commodations be demolished and replaced by safe and sanitary dwelling accommodations for persons of low income, and petitioner has not sought to replace any such housing, and defendants aver on information and belief that it has no intention of doing so.

(4) Defendants charge that the petitioner is and has been guilty of palpable abuse of power and discretion delegated to it by the Legislature, by an attempted appropriation of the real estate in question, in utter disregard of the Act and housing conditions described in the paragraph immediately above, and therefore should be denied the right to acquire this property by condemnation.

On February 11, 1953, the consolidated cases were heard by the Court, by consent at Chambers, upon the petitions of condemnation, the answers of the defendants, and the testimony of the witnesses in open Court, and the Trial Judge adjudged that the defendants had failed to establish either in law or in fact that there had been a palpable abuse of discretion by the plaintiff, Housing Authority, in its exercise of the right of eminent domain, and that the Housing Authority had the right to take the designated property, and ordered the issuance of Writs of Inquiry from the Clerk to appoint a jury of view for the purpose of assessing the amount of compensation and damages due each of the defendants for the taking of the subject property, to which action the defendants excepted. The Court also in the same order overruled defendants' motion for a new trial and disallowed the defendants' prayer for an appeal to the Court of Appeals from this order.

Writs of Inquiry were issued by the Clerk, and a jury of view was empanelled and sworn on March 4, 1953, by

consent, and said jury of view made written report fixing the amount of compensation and damages to each defendant.

On September 23, 1954, at an adjourned term of the Circuit Court of Gibson County, an Order was entered referring to the procedendo of the Court of Appeals in this cause and further overruling exceptions of Trenton Housing Authority to the report of the Jury of View in each of the three cases, confirming the report of the Jury of View, and granting the Trenton Housing Authority an appeal on the question of damage to the next term of the Circuit Court of Gibson County, in Trenton, Tennessee.

The Order further recited that the Trenton Housing Authority should hold for the use of itself, its successors and assigns, the land described in the report of the Jury of View provided the Housing Authority give bond in double the amount of the assessment of the Jury of View payable to defendants, and conditioned to abide by and perform the final judgment in the premises.

To this action of the Court the defendant landowners excepted and gave notice of their intention to file Petition for Certiorari and Supersedeas in the Court of Appeals.

As stated above, this petition was filed, the writs of certiorari and supersedeas granted and issued, and the entire record is again before this Court for an adjudication of the right of the Housing Authority to take the land in question.

Petitioners (defendants below) have filed the following Assignments of Error:

"Assignment of Error No. I

"The Court erred in holding and adjudging that Plaintiff, Trenton Housing Authority, (a) had complied with

the purpose and intent of .the Housing Authority Law, and was acting legally, and had not exceeded its authority under the Act by selecting vacant sites rather than acquiring and demolishing slum areas to provide locations for a new construction; (b) in holding and adjudging that the purpose and intent of the Housing Authority law had been legally complied with merely by entering into a contract with the City of Trenton whereby the City of Trenton agreed to acquire and demolish certain congested slum areas at some future date.

"This was error because:

"(A) The courts have held that slum areas are not only a menace to health, safety, and morals of those persons living therein, but since disease, crime, immorality and fires can with difficulty be confined to points of origin, these districts are a menace to the whole community and state; that the Housing Authority Law had for its purpose the clearing .of these blighted and congested areas for greater health and safety, and housing constructed on those cleared areas to be rented to families of low income.

"(B) The City of Trenton cannot legally contract away its sovereign rights with and for the benefit of a private corporation, and therefore the contract could not be enforced, and even if it could the contract may never be performed, and does not meet the requirement of the Housing Authority law of clearing slum areas in accordance with the clear intent of the law under which it was created.

"Assignment of Error No. II

"The Court erred in holding and adjudging that the term "palpable abuse .of power or discretion" imports only actual fraud or bad faith (opinion Tr. 283).

"This was error because the common and ordinary definitions of the words disclose no such interpretation as adopted by the trial court.

" 'Palpable' means obvious, or plainly seen, or readily perceived by the mind.

" 'Abuse' means wrong or improper use, misuse, harsh, injurious, or a corrupt practice. Abuse may be something done corruptly or fraudulently but certainly not necessarily that. There are many reported cases where it is held that the Court abused its discretion, but this by no means indicates that the Court was guilty of fraud or bad faith.

"So we submit that 'palpable abuse' of discretion means an obviously improper or wrong use of discretion delegated to the Housing Authority.

"Assignment of Error No. III

"The Court erred in holding that Plaintiff was not guilty of a palpable abuse of discretion, delegated to it by the Legislature, in selecting the property owned by the Defendants and sought to be condemned for the proposed site of Project Tenn. 25-2, a negro housing project for low income negroes, said holding being contrary to the law and the greater weight of the evidence.

"This was error because the overwhelming proof shows that to locate this proposed 32-unit negro housing project on the lands sought to be condemned in this proceeding would produce great annoyance and discomfort to the white residents of the entire community, and create a condition of fear and anxiety for the safety of the women and children in the community, and otherwise interfere with the comfortable enjoyment of home, life and property; also, property values in the community would be greatly reduced both to the individuals and for tax assessments.

"Because the advantage to the Housing Authority, as a public agency, is not sufficiently great to out-weigh the private injury, particularly when there are slum areas available that need to be cleared.

"Assignment of Error No. IV

"The Court erred in holding as a matter of law, that the question of the location of the project was a determination which rested solely with the Trenton Housing Authority, and was not a matter for determination of the Court.

"This was error because the appellate courts of this State have held that it was proper to exercise control in eminent domain cases where the condemning authority was guilty of an abuse of discretion in selecting the site.

"The courts have progressively recognized the necessity for some control of agencies to whom the right of eminent domain has been delegated by the Legislature, as distinguished from the sovereign power exercising the right.

"Assingment of Error No. V

"Because the judgment of the Court is against the law and the greater weight of the evidence.

"This was error for several reasons set forth in support of the previous assignments of error."

The defendants, by their Assignments of Error, do not question that Trenton Housing Authority has the right of eminent domain, but contend that the officials of the Housing Authority have been guilty of "palpable abuse of power or discretion" in selecting the particular site owned by these defendants as a housing project for Negro families in the low income bracket because of the social problem involved in placing a Negro housing

project in a neighborhood occupied predominantly by white people and because such action would result in greatly reducing the value of real estate in this same neighborhood.

The site sought to be condemned is located near the City Limits of the Town of Trenton, and the property runs 441 feet along the south margin of Third Street; thence southeast 292.9 feet along the east lines of property belonging to Wells and McFadden; thence eastward 457.3 feet to the west margin of Fairgrounds or Locust Street; and thence 294.2 feet along the west margin of Fairgrounds or Locust Street to the beginning. The defendants, Finis C. Harper and H. N. Harper, own the property immediately south of the land sought to be condemned, and the defendant, Finis Harper, testified that his residence is located 250 feet from the south boundary of the land sought to be condemned.

The proof shows that the homes located on the north side of Third Street facing the proposed project are all occupied by colored people, and that there is a house occupied by colored people which joins the proposed site on the west, and that within a distance of two blocks of the proposed site there are something over forty houses occupied by colored people, as well as a Negro school and one or more stores. The plans call for the housing project to face Third Street, which is occupied entirely by colored people, and the only automobile entrance and exit will be from Third Street, and there will be walkways running from Locust or Fairgrounds Street into the project.

The plans for the project contemplate some eighteen new brick houses to accommodate thirty-two Negro families. A hedge is to be placed all along the south

boundary line to separate the housing project property from the remainder of the property owned by defendants, Finis C. Harper and H. N. Harper. There will be approximately thirty-two feet between the southern boundary line of the houses and the hedge located on the boundary between the project and the property of the Harpers.

Some forty-four witnesses testified in behalf of the defendants to the effect that the proposed site was not the proper place to put the housing project; that it would create social problems attendant upon nonsegregation; and that it would greatly depress the price of real estate in the neighborhood. Eight persons testified on behalf of the plaintiff, Housing Authority. Among these were the five members of the Housing Authority, and the Mayor and two members of the Board of Aldermen of the City of Trenton.

Their testimony was to the effect that they considered this site in a Negro section of Trenton, and that the placing of the project on this particular location would not unduly affect real estate values in the neighborhood.

The Mayor of Trenton testified that he owned rental property in close proximity to the proposed project site and that in his opinion the project would enhance real estate values, if anything, and that he knew of a number of instances in the Town of Trenton where houses occupied by colored people were side by side to houses occupied by white people, and that they were within 100 to 150 feet of each other as distinguished from the 250 feet separating the house of the defendant, Finis C. Harper, from the south line of the proposed site.

It has been decided by the Supreme Court of Tennessee in the case of Knoxville Housing Authority v.

City of Knoxville, 174 Tenn. 76, 123 S. W. (2d) 1085, that the creation of housing authorities is constitutional, and that such housing authority has the right of eminent domain and that the taking and holding of property by such an authority is for a public purpose. This holding was reaffirmed in Nashville Housing Authority v. City of Nashville, 192 Tenn. 103, 237 S. W. (2d) 946.

■ We think the controlling rule in Tennessee as to the right of a landowner to litigate the necessity of taking by an agency having the right of eminent domain is clearly stated in the case of Williamson Co. v. Franklin & Spring Hill Turnpike Co., 143 Tenn. 628, 647, 228 S. W. 714, 719, as follows:

"It is everywhere settled that, in the absence of a clear and palpable abuse of power, the determination of the necessity for the taking and what property shall be taken is not a question for the judiciary, but for the Legislature or the body to whom the right of eminent domain is delegated by it. 10 R.C.L., § 158."

See also:

Department of Highways v. Stepp, 150 Tenn. 682, 688, 266 S. W. 776; Justus v. McMahan, 189 Tenn. 470, 475, 226 S. W. (2d) 84; Southern R. R. v. City of Memphis, 126 Tenn. 267, 148 S.W. 662, 41 L.R.A., N.S., 828; 18 Am. Jur.—Eminent Domain—735, Sec. 108.

The very vigorous and sincere objections and protests which these defendants have made against taking their property for the location are certainly understandable. However, the law of eminent domain is predicated upon the theory that in the course of government from time to time it becomes necessary to take private property

for public use, even against the objections and protests of the owner. The possibility that one's property may be taken for public purposes is a limitation upon every citizen's ownership of his property.

Section 21 of Article 1 of the Constitution of Tennessee provides as follows:

"That no man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

Under the cases cited above, it is clearly the law in Tennessee that we can weigh the evidence in this cause only for the purpose of determining whether or not such evidence shows a palpable or obvious abuse of the authority to take private property delegated to the Housing Authority by the Legislature.

A review of the evidence reveals that the Housing Authority considered several sites in Trenton, heard protests from these defendants and other citizens of Trenton, and determined that the site in question was the site most suited and most desirable for the housing project.

There is no suggestion that the members of the Housing Authority or the Mayor and Aldermen of the Town of Trenton, Tennessee, are actuated in the premises with any sinister purpose or with any motive of personal gain, or of malice toward these defendants or other persons in the Town of Trenton.

In the final analysis the evidence shows clearly a difference of opinion between the members of the Housing Authority and the officials of the Town of Trenton on one side and the defendants and their witnesses on the other as to whether or not the Housing Project is needed

at all, and, if so, as to whether this particular site is the best site available for it.

■ The final decision for the necessity of taking and the site to be condemned is vested by the Legislature in the Trenton Housing Authority. From our review of the evidence presented in the cause, we cannot say and do not find that the Trenton Housing Authority and its officials have been guilty of a palpable abuse of power or discretion.

Therefore, Assignments of Error 3, 4, and 5 are respectfully overruled.

Assignment of Error 1 assails the action of the Housing Authority in taking the lot in question because it is a vacant lot, whereas the purpose of the law authorizing the Housing Authority to condemn contemplated the acquisition and removal of substandard dwellings.

The record shows that the Mayor of Trenton acting on behalf of the Town of Trenton has executed a contract of cooperation with the Trenton Housing Authority which provides that the City of Trenton will within a five-year period after the erection of the proposed project clear by demolition, condemnation, effective closing or compulsory repair, substantially the same number of unsafe or unsanitary dwelling units in the locality or metropolitan area as there are new family dwelling units erected as a new housing project.

■ It is the contention of the defendants that this contract is only executory, that it is subject to approval by the Public Housing Administrator, and it does not appear of record that this contract has ever been approved by the Board of Aldermen of the Town of Trenton and entered upon the Minutes of such Board. We agree with counsel for defendants that this contract is

only executory and is not binding upon the Town of Trenton until the same has been approved by the Board of Aldermen and shown upon the Minutes of a legal meeting of such Board of Aldermen. Stegall v. City of Chattanooga, 16 Tenn App. 124, 66 S. W. (2d) 266.

■ In our opinion the Housing Authority was not limited to condemn only slum areas for the erection of new construction. One purpose of the general law creating housing authorities was slum clearance, but another purpose was the creation of housing for low income groups. As suggested by one of the witnesses for the Housing Authority, to condemn and demolish a substandard dwelling area without having more suitable quarters for the occupants of such sub-standard area would probably result in even greater congestion in other sub-standard or overcrowded areas.

■ We think the provisions of Section 3647.1 et seq. under which the Housing Authority is created, are sufficiently broad to authorize the Housing Authority, in its discretion, to condemn and build new housing facilities on vacant property, as well as to demolish existing substandard units and replace with new desirable housing facilities. Therefore, Assignment of Error No. 1 is overruled.

Assignment of Error No. 2 is directed to the phraseology used by His Honor, the Trial Judge, in his opinion upholding the right of the Housing Authority to take the lands in question. It is true that in discussing the various cases and authorities relating to the term "palpable abuse of discretion", His Honor did make the following statement: "Under this language it may be concluded that the term imports fraud or bad faith."

We agree with the insistence of the petitioners that

the word "palpable" does not necessarily refer to fraud or bad faith or some sinister scheme. We would probably disagree with the one statement quoted above from His Honor's opinion in the abstract. However, when we consider said statement along with the other expressions by His Honor in rendering said opinion, we feel that he correctly interpreted and construed the authorities as they related to the case at Bar, and that his decision in this case and the judgment rendered thereon were in all things correct.

Therefore, Assignment of Error No. 2 must be respectfully overruled.

The judgment of the lower Court is in all respects affirmed and decree will be entered remanding the cause to the Circuit Court of Gibson County for further proceedings consistent therewith.

The petitioning landowners are taxed with all costs accruing in this Court.

Avery, P. J., and Bejach, J., concur.