**CITY OF MARYVILLE, Appellee,**

v.

**Robert N. EDMONDSON and wife,
Frances L. Edmondson,
Appellants.**

Court of Appeals of Tennessee,
Western Section, at Knoxville.

Feb. 20, 1996.

Permission to Appeal Denied by
Supreme Court July 8, 1996.

Roy D. Crawford, Maryville for Appellee.

Joe Costner, Maryville, for Appellants.

CRAWFORD, Presiding Judge, Western Section.

This appeal involves a challenge to a condemnation proceeding in which the City of Maryville condemned a portion of the defendants' real property in order to construct and maintain a sewer line. The facts are as follows.

On March 25, 1994, the City of Maryville (City) filed a Complaint for Condemnation in the Circuit Court for Blount County, Tennessee, seeking to acquire a permanent easement and a construction easement across the real property of Robert and Frances Edmondson for a sewer line. Upon filing the complaint the City also deposited with the court clerk the sum of $2035.00 as compensation for the taking. The permanent easement sought is twenty-five feet wide and two thousand feet long for a sewer line to service a newly annexed property known as Royal Oaks Golf Community. Although the Royal Oaks development was annexed by the City, various City resolutions provided that Royal Oaks would be required to provide its own sewer system which would be connected to the main trunk of the city sewer line. The resolutions provided, "Internal sewer system will be provided by the developer and is a private system. It will be connected to the publicly owned sewer system." Pursuant to the design of the system, the two thousand feet of line for which the easement is sought would be installed at the City's expense and would bring the line from the City's main trunk line to the edge of Royal Oaks's property where it would connect with line installed by (and at the expense of) Royal Oaks.

On April 11, 1994, the Edmondsons filed an answer which denies the necessity of the easement across their property. The answer also states that the $2035.00 offered by the City underestimates the defendants' probable damages in the event their property is condemned. On May 1, 1995, the trial court held a hearing on the issue of the right of the City to take the Edmondsons' property by eminent domain.

Jeff Rose, a City of Maryville civil engineer who specializes in water and waste water engineering, was responsible for planning the sewer system which would serve Royal Oaks, and he made the ultimate decision to install the sewer line across the Edmondson property. At the hearing, Mr. Rose testified that he rejected one alternative to placing the line across the Edmondson property, because it would require the line to be installed across a number of privately owned parcels of land and would require a line twice as long as the line across the Edmondson property. Mr. Rose also testified that a second alternative to placing the line across the Edmondsons' property would place the proposed sewer line almost entirely across Royal Oaks's property. The installation of the line in this manner would traverse only a small portion of privately owned property referred

to as "Industrial Park" and would only require 150 feet of sewer line to be installed at City expense. Mr. Rose further stated that under this alternative the City would not have to pay to purchase an easement, because "Industrial Park" is partially owned by the City. He explained that this second alternative was not chosen, however, because installing the line across Royal Oaks's property and through Industrial Park would be "a pretty big expense," because it would require the installation and maintenance of a pump station due to the elevation of the land.[1]

Mr. Rose further testified that the City of Maryville and Royal Oaks had reached some type of oral agreement by which the City agreed to place the sewer line across the property of the Edmondsons. Mr. Rose acknowledged that the placement of the system in this manner would save Royal Oaks money, because Royal Oaks would not have to install a pump station.

On May 5, 1995, the trial court entered an order finding that the City was entitled to be granted both the construction easement and the permanent easement across the defendants' land. The court found that the condemnation of the defendants' land was for a public purpose and that the City had not acted fraudulently, arbitrarily, or capriciously by condemning the defendants' property. The court granted the City an immediate right of possession to the condemned land. The defendants have appealed and present one issue for our review:

Whether the Trial Judge Erred By Finding the City of Maryville did not act arbitrarily of capriciously in seeking to take the Edmondsons' property by eminent domain for a sewer easement?

The defendants assert that installing the sewer line across "Industrial Park" and the property of Royal Oaks would save the City of Maryville money, because the City would not have to purchase an easement and would only be required to install 150 feet of line rather than the 2000 feet of line across the Edmondsons' property. They argue that by choosing a sewer installation plan which saves a private developer money at the expense of the City and the Edmondsons, the City of Maryville acted arbitrarily and capriciously.

██ In *Southern Ry. Co. v. City of Memphis,* 126 Tenn. 267, 148 S.W. 662 (1912), our Supreme Court stated:

[W]here ... [a] taking is for a public use, the only remaining restriction on the sovereign power is to pay the fair and reasonable value of the property taken, generally denominated "just compensation." This includes an adequate and sufficient procedure to be provided by the sovereign to ascertain the fair value of the property to be taken, and payment in cash, or a good and solvent bond to secure the payment, at the time the property is taken. And, like the purpose of the taking, these are judicial questions .... (citations omitted).

But all other incidents of the taking are political questions, for the determination of the sovereign, and not judicial questions, for the determination of the courts. Selecting the property to be taken, as contradistinguished from similar property in the same locality, determining its suitableness for the use to which it is proposed to put it [sic], as well as deciding the quantity required, are all political questions, which inhere in and constitute the chief value of the power to take. This power would be a vain and empty thing, if the owner could contest the advisability of taking his property rather than his neighbor's, or if he could interpose as a defense to the taking that other property could be found which would suit the public purposes better, or that he, the owner, was of opinion and could prove that the public needed more or less than the quantity proposed to be taken. The power to take would be of small value, if the thing to be taken, in its quan-

---

1. Mr. Rose's testimony indicates that a system requiring a pump station to move waste water by pressure is more expensive than a system such as the one proposed to be placed on the defendants' property which is a "gravity system" in which waste water flows by the force of gravity.

tity, quality, and locality, could be determined by another and adverse interest.

126 Tenn. at 282–83, 148 S.W. 662. "The determination by a condemning authority of the necessity for the taking is not a question for resolution by the judiciary and, absent a clear and palpable abuse of power, or fraudulent, arbitrary or capricious action, it is conclusive upon the courts." *Duck River Elec. Membership Corp. v. City of Manchester,* 529 S.W.2d 202, 204 (Tenn.1975) (citations omitted).

The defendants' "arbitrary and capricious" argument is essentially two-fold. First, they argue that the City may not make condemnation decisions which save a real estate developer money at the expense of other citizens. Second, they argue that when the City is presented with alternate condemnation plans, the City may not choose a plan which will result in more City funds being expended under that plan than under another plan.

The defendants' first argument is without merit, because the majority of eminent domain decisions made by a sovereign will (and must) be at the expense of one citizen over another.[2] This is true every time a sovereign chooses to condemn the land of one person rather than that of another. Although the evidence indicates that placing the line across the Edmondsons' property will save Royal Oaks the expense of installing a pumping station, Rose testified that in this installation the gravity system rather than the "pump system" is "the preferred way" to service Royal Oaks.

As to defendants' second argument, the testimony of Mr. Rose indicates that the line route across the Industrial Park and Royal Oaks was not chosen because that route would have required the added expense of maintaining a pumping station to pump the sewage across the elevation of the Royal Oaks property. The defendants assert that the cost of building and maintaining this pumping station should not be considered in determining whether the actions of the City were arbitrary or capricious, because these costs would have to be borne entirely by Royal Oaks. Our reading of the record does not support this assertion.

Mr. Rose stated that Royal Oaks would bear the cost of constructing the pump station, but from his testimony it is unclear whether Royal Oaks or the City of Maryville would bear the significant cost of maintaining the pump station. Mr. Rose acknowledged that various City resolutions stated that "[i]nternal sewer service will be provided by the developer and is a private system" and that there were no contracts or agreements between the City of Maryville and Royal Oaks which required the City to assume the burden of maintaining the pump station, but he never stated that the cost of maintaining the pump station would in fact be borne by Royal Oaks. He testified that although the City and Royal Oaks had reached agreements regarding other aspects of installing the line which would service Royal Oaks, they had not reached an agreement as to the payment of the maintenance costs of a pump station. Thus, we cannot conclude that it would have been more cost effective from the standpoint of the City of Maryville to place the sewer pipe across the Industrial Park and Royal Oaks when to do so could have resulted in the City being responsible for the significant costs of maintaining the necessary pump station. Moreover, even if we assume that the "Industrial Park plan" would have been more cost effective from the standpoint of the City, we cannot say that the City's implementation of a more expensive plan is per se arbitrary and capricious. Certainly the expense to the City of implementing one

---

**2.** In *Harper v. Trenton Hous. Auth.,* 38 Tenn.App. 396, 274 S.W.2d 635 (1954) this Court stated: [T]he law of eminent domain is predicated upon the theory that in the course of government from time to time it becomes necessary to take private property for public use, even against the objections and protests of the owner. The possibility that one's property may be taken for public purposes is a limitation upon every citizen's ownership of his property.
274 S.W.2d at 641.

plan or the other is one factor to consider in determining whether the City acted arbitrarily or capriciously, but it is not the only factor.[3] Furthermore, the fact remains that the testimony in the record is that the sewer system proposed to be utilized is the "preferred" system.

In summary, we do not think the defendants have sustained their burden of proving that the City acted arbitrarily or capriciously, or that the City palpably or obviously abused its authority in condemning the Edmondson property. We think the City, through Mr. Rose, legitimately determined that the line across the Edmondson property was the practical and "preferred" way to serve the Royal Oaks development. Although the City may have developed a better or less expensive sewer installation plan, it is not the function of this court to weigh the alternatives and consider which of them is best. The appellants do not dispute that the condemnation of their property is for a public purpose or that a determination of just compensation therefor will be made. The record simply does not show that the City clearly and palpably abused its authority or acted fraudulently, arbitrarily, or capriciously by condemning this property. Therefore, the City of Maryville's determination that the condemnation of the defendants' property is necessary is binding upon this Court. *Duck River Elec. Membership Corp. v. City of Manchester*, 529 S.W.2d 202 (Tenn.1975).

Accordingly, the judgment of the trial court is affirmed, and the costs of this appeal are assessed against the appellants.

HIGHERS and FARMER, JJ., concur.

---

**3.** It is obviously futile to attempt to list the number of factors which would or should be considered by a sovereign in making condemnation decisions, thus we decline to do so.