IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 7, 2001 Session

## GATLINBURG AIRPORT AUTHORITY, INC. v. ROSS B. SUMMITT, ET AL.

**Appeal from the Circuit Court for Sevier County**
**Nos. 2000-178-II, 2000-198-II and**
**Nos. 99-1093-II, 99-1094-II, 99-1095-II & 99-1096-II,   W. Dale Young, Judge**

**FILED JULY 24, 2001**

**No. E2000-02646-COA-R3-CV**
**No. E2000-2652-COA-R3-CV**

An electrical transmission line owned and maintained by TVA is located about 1000 feet from the eastern end of the runway at the airport owned and operated by the Gatlinburg Airport Authority [GAA]. The transmission line was constructed before the Airport was established. The two have coexisted without mishap, and no official publication, State or Federal, warns of any danger to aircraft posed by the transmission line. However, because of the transmission line, 360 feet of the runway cannot be used by aircraft landing or taking off. The GAA, after 35 years, concluded that the transmission line was an airport hazard. TVA is immune from suit, but agreed to relocate its transmission line if GAA would acquire the necessary easement over lands of the defendants. The trial court dismissed the eminent domain action, holding that (1) the plaintiffs should seek relief against TVA if the transmission line is hazardous, (2) the line is not hazardous, (3) there is no necessity to remove the line, (4) the attempted condemnation is arbitrary and capricious. The judgment is vacated.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Vacated;**
**Cause Remanded**

HOUSTON M GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO JR., and D. MICHAEL SWINEY, JJ., joined.

Ronald E. Sharp, Sevierville, Tennessee, for the appellant, Gatlinburg Airport Authority, Inc.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the appellees, Ross B. Summitt, et al., Billy M. Grinstead, et al., and Nillah G. Cox, et al.

Appellees Ray Fox and wife, Mae Fox, did not file an appellate brief.

# OPINION

## Pleadings

We have consolidated the appeals in these eminent domain cases. The principal action was filed November 30, 1999, by the Gatlinburg Airport Authority, Inc. [GAA] seeking to exercise its powers of eminent domain, T.C.A. § 42-3-108 *et seq.,* to acquire a permanent easement over the land of the defendants for the relocation of an electric power transmission line.

GAA alleged that high voltage power lines, located immediately east of its airport, are a hazard to aircraft taking-off and landing at the airport, and should be removed. These power transmission lines are owned by the Tennessee Valley Authority [TVA], an agency of the United States government, which has agreed to the relocation of the lines provided that the GAA will obtain another easement, a portion of which is across the property of the defendants.

The TVA transmission line is located about 1000 feet from the approach end of Runway 28, according to the allegations of the petition referencing a letter from the Chief Engineer of the Aeronautics Division of the Tennessee Department of Transportation. The runway threshold is displaced 360 feet to allow for the required Federal Aviation Administration [FAA] clearance over the transmission line, which is recognized by the Aeronautics Division and the FAA as hazardous to aircraft taking off and landing.

The referenced letter states that additional reasons for the relocation of the transmission lines are (1) the elimination of the 360-foot displaced threshold which will allow aircraft to utilize the entire length of the runway, i.e., 5506 feet vis-a-vis 5146 feet, and (2) the current FAA-approved Airport Layout Plan depicts the relocation of the transmission line to allow for the development of an instrument approach.

The defendants filed objections to the right to take, asserting that the TVA acquired its transmission line easement before the airport was opened. In the spring of 1999, the TVA constructed a new transmission line on its existing easement which was fifteen feet lower than the original line.

The defendants, further objecting, alleged that it must be shown that the transmission line is a hazard to aviation because no official publication mentions the alleged hazardous nature of the transmission line, and aircraft have been flying over the line for more than 35 years without incident.

Further objecting, the defendants allege that T.C.A. § 42-3-108, upon which the GAA relies authorizes the GAA:

For such purposes, an authority may, by purchase, gift, devise, lease, eminent domain proceedings or otherwise, acquire property, real or personal, or any interest therein, including avigation easements and easements in airport hazards or land outside the boundaries of an airport or airport site, as are necessary to permit the removal, elimination, obstruction-marking, or obstruction-lighting of airport hazards or to prevent the establishment of airport hazards;

and that the statute does not authorize the GAA to acquire "an electrical transmission line easement."

Further objecting, the defendants alleged that the TVA transmission line is not a hazard and need not be relocated, and that GAA is acting arbitrarily and in bad faith, thus requiring a hearing before the entry of an Order of Possession. Further, the defendants plead that the GAA is proceeding under an inapplicable statute, Chapter 17 of Title 29 of the T.C.A.

The ancillary actions were filed in March 2000 seeking access to the property sought to be acquired, or an easement therein, for the purpose of survey. These actions were filed pursuant to the authority of T.C.A.§ 29-16-121 according to the allegations, and were not specifically adjudicated.

The defendants filed an answer to the petition for condemnation, essentially reasserting the allegations contained in their objections heretofore referenced, and denying the right of the GAA to take their property for the erection of a transmission line which would be the property of TVA, if it, in fact, relocated the line as alleged by GAA.

The defendants counterclaimed for a declaratory judgment as to the propriety of the proposed actions by the GAA.

## Motions

The defendant filed a motion to dismiss, alleging that T.C.A. § 42-3-109 requires GAA to proceed under the authority of Chapter 16 of Title 29, rather than Chapter 17.[1]

The plaintiff filed a motion for summary judgment, as to the counter-claim, alleging that T.C.A. § 42-2-103 provides:
" . . . no action or suit shall be brought or maintained against . . . [the] airport authority . . . in or about the construction . . . operation . . . or management of any . . . airport authority . . . or airport hazard"

thus forbidding the filing of the action for declaratory judgment. The plaintiff further alleged that the determination of what constitutes an airport hazard is exclusively delegated to the Aeronautics Division, and that, by statute, an airport hazard is defined by T.C.A.§ 42-6-101(2) and 102.

---

[1] This issue is not briefed and we will not further notice it.

Section 102(a) provides:

It is hereby found that an airport hazard endangers the lives and property of users of the airport and of occupants of land in its vicinity, and also, if of the obstruction type, in effect reduces the size of the area available for the landings, taking off and maneuvering of aircraft, thus tending to destroy or impair the utility of the airport and the public investment therein.

Section 101(2) provides that:

"Airport hazard" means any structure or tree or use of land which obstructs the airspace required for flight of aircraft in landing or taking off at an airport or is otherwise hazardous to such landing or taking off of aircraft.

The motion for summary judgment was supported by the affidavit of Tom Burgess, Chief Engineer of the Aeronautics Division who deposed that he was familiar with the high voltage lines which displaced 360 feet of the runway, and that the power lines constituted a hazard as statutorily defined.

## **The Judgment**

All "issues and motions" were submitted to and considered by the court on May 4, 2000 and taken under advisement. The decisional process included; (1) the request of the GAA for access to the land sought to be condemned for purposes of survey; (2) Order of Possession; (3) the Motion to Dismiss; (4) the motion of GAA for summary judgment.

The trial judge found that the "dispositive issue before the court is whether or not the Authority [GAA] has acted arbitrarily or capriciously."

The trial court concluded that "the Authority had acted arbitrarily and capriciously" and dismissed the suits. The court found that "since before 1955" TVA established and maintained "a power line exactly as the same exists today" except in recent years new lines have been added "some fifteen feet below the old transmission line." The court further found that the TVA transmission lines were in place when GAA constructed the Airport in the 1960's, and no regulatory agency raised the issue that the TVA lines were a hazard. The court further found that no official publication, State or Federal, warns of the alleged hazard.

After observing that Tom Burgess, the Chief Engineer of Aeronautics Division, testified that the power lines and the terrain constitute a hazard, which was disputed by the affidavit of S. W. Gilbreath, a pilot who has used the airport for 30 years, that neither the hill not the lines was a hazard, the court found that "for more than 30 years there has been no material change in TVA's power lines or the surrounding terrain."

The trial judge concluded that T.C.A. § 42-6-102 "is intended to deal with landowners who build structures or make use of surrounding land subsequent to the establishment of an airport that would create a hazard,"[2] and "this is certainly not the case here."

Finally, the trial, court concluded that "the power lines which were present many years before the airport was built have suddenly become an 'airport hazard,'" and that the "GAA has acted arbitrarily and capriciously in connection with its efforts to get the power lines moved."

## The Issues

The GAA presents for review the issues of (1) whether the trial court erred by denying it the right to enter upon the land of the defendants for the purpose of making a preliminary survey, (2) whether the trial court erred in holding that GAA acted arbitrarily and capriciously, and (3) whether the trial court erred in holding that there was no necessity for the taking. All issues are answered affirmatively.

## Analysis

At the outset we note that contested issues of material fact cannot be resolved by summary judgment. *See, Rule 56 Tennessee Rules Civil Procedure.* We are motivated by the finding of the trial judge that the Chief Engineer of the Aeronautics Division opined that the power lines constituted an airport hazard, while a licensed private pilot was of a contrary opinion. Ordinarily, this rather clear factual dispute would require a reversal of judgment and a remand for a merit trial, but in light of our conclusion that the determination of what constitutes an airport hazard is defined by statute or is exclusively delegated to the Aeronautics Division of the Department of Transportation or to the FAA or the Airport Authority, consistent with administrative procedures and review, we conclude that the seeming factual dispute is of no legal consequence.

We further note that the relief sought in the complaints seeking access for purposes of survey should have been routinely granted since T.C.A. § 29-16-121 provides for preliminary surveys, and T.C.A.§ 42-3-109 specifically provides that for the purpose of making surveys relative to eminent domain proceedings "it is lawful for the authority to enter upon the land." We agree with the plaintiff that the court erred in denying the GAA the statutory right to enter upon the requisite land for the purpose of making a preliminary survey.

We now take up the issue that is dispositive of this litigation, that being the right of GAA to acquire, through the exercise of its right of eminent domain, an easement over the lands of the defendant to accommodate the removal of the transmission lines of the TVA which allegedly constitute an airport hazard.

---

[2] The trial court apparently intended to cite T.C.A. § 42-6-101(2) which defines an airport hazard as "any *structure* or tree or use of land which obstructs the airspace required for the flight of aircraft in landing or taking off . . ." (emphasis added).

We may briefly allude to the right of GAA to acquire private property for a lawful governmental use. It is duly chartered pursuant to T.C.A. § 42-3-101 *et seq.* and is vested with the power of eminent domain. T.C.A.§§ 42-3-108, 109. It has the statutory power to acquire property that is necessary to permit the removal, elimination, or prevention of an airport hazard. T.C.A.§ 42-3-108(3). The possibility that private property may be taken for public purposes is a limitation upon every citizen's ownership of his property. ***Harper v. Trenton Housing Authority***, 274 S.W.2d 635, (Tenn. Ct. App. 1954).

The trial judge made various findings of fact, to which we will later allude, but, as heretofore recited, the dispositive issue was whether the GAA acted arbitrarily or capriciously. This issue is one of law, ***Metropolitan Government of Nashville and Davidson County v. Huntington Park Associates***, 1988 WL 112912 (Tenn. Ct. App.). As to findings of fact, appellate review is *de novo* on the record with a presumption of correctness unless the evidence preponderates against the judgment. Rule 13(d) T.R.A.P. As to questions of law there is no presumption.

The trial judge held that the

"Authority's [GAA] quarrel ought properly [to] be with TVA and not with private citizens. If TVA deems it appropriate to relocate the power lines in question, the location of the lines will be an issue for another court on another day."

We cannot agree. It is elementary that the TVA is an agency of the United States Government, and can be sued only with its consent subject to statutory exceptions not present in this case. Moreover, the record reveals that the TVA has agreed to relocate the power lines if GAA would obtain another easement. The FAA and the State of Tennessee agreed to fund 90 percent of the cost of the project.

The appellees argue that T.C.A.§ 42-3-108 does not authorize the acquisition by GAA of an electrical transmission line easement outside its boundaries. We do not believe the statute should be so narrowly read. GAA does not seek to acquire electrical transmission lines. A plain reading of the statute provides the GAA may, by eminent domain, acquire property outside the airport boundaries necessary to permit the removal of a hazard. The record reveals that the GAA proposes to acquire an easement for removal of the transmission lines which are deemed hazardous to aircraft landing or taking off.

The appellees insist that the burden is on the GAA to establish that the TVA transmission line is a hazard, and that the determination by the Chief Engineer is insufficient for the purpose. The appellees argue that aircraft have been flying over the transmission line for 35 years without mishap which is "proof positive" that the lines do not constitute a hazard.

We cannot agree. The absence of a mishap is proof of nothing except that a mishap has not yet occurred. The *entire length of the runway cannot be utilized* because of the proximity of the transmission lines. It is apparent that the airport cannot presently accommodate larger and faster

aircraft owing, in part, to the shortened runway and the concomitant lack of modern instruments to facilitate landings. T.C.A. § 42-6-102 defines an airport hazard as something which "in effect reduces the size of the area available for landings, take offs and maneuvering of aircraft." As noted 360 feet of the runway is not usable because of the transmission line. We agree with the appellant that a determination of what or how to eliminate the hazard is for the appropriate regulatory body, not the judiciary.

The trial court determined that the actions of the appellant were "arbitrary and capricious." We cannot agree. Since the issue is one of law, our review is *de novo* with no presumption of correctness. *Bellinton v. Crowder*, 553 S.W.2d 590 (Tenn. Ct. App. 1977).

"Arbitrary and capricious as applied in the area of eminent domain must mean willful and unreasoning action without consideration and in disregard of the facts and circumstances existing at the time condemnation was decided upon or within the foreseeable future." *Wagoner v. City of Arlington*, 345 S.W.2d 759 (Tex. Civ. App. 1961) cited with approval in *Metro Govt. v. Huntington Park Asso.*, *supra*. There is no evidence in this record that GAA acted willfully or unreasonably; rather, the record reveals only that GAA has thus far acted in accord with the statutes providing for the exercise of eminent domain. The trial court found that no hazard existed, which impelled its conclusion that there was no necessity for the taking. Syllogistically, then, according to the trial court, the attempted taking was arbitrary and capricious.

As we have stated, a hazard exists, by clear statutory definition, and the GAA has the positive duty to eliminate it. If this is to be accomplished by the taking of private property, the GAA is accorded that right, but only to the extent necessary. *See, Clouse v. Garfinkle*, 231 S.W.2d 345 (Tenn. 1950).

## Conclusions

1. The GAA has the power of eminent domain.

2. The GAA owns and operates the described airport.

3. The GAA lawfully determined that the TVA electrical transmission line located at the eastern end of the runway is an airport hazard within the ambit of T.C.A. § 42-6-101(2) since it is a "structure" which "obstructs the airspace required for the flight of aircraft in landing or taking-off."

4. The fact that no accidents or mishaps have occurred involving the transmission line is irrelevant and has no bearing whatever on the issue of future safety.

5. There is no proof in the record that the GAA acted arbitrarily or capriciously.

6.    The motion of GAA for a summary judgment in the declaratory action case is granted.

7.    The court erred in finding that no hazard existed and hence no necessity for its elimination.

8.    The request of the GAA for access to the lands of the defendants for purposes of surveying is granted.

9.    The finding by the trial court that the GAA's "quarrel ought properly to be with TVA and not with private citizens" is not supported by the evidence or by the law.

10.   The judgment is vacated and the case remanded for the entry of a judgment in accordance with this opinion, and for further proceedings as appropriate. Costs of appeal are adjudged against Ross B. Summitt and wife, Mae Summitt; James B. Cox and wife, Nillah Cox; Ray Fox and wife, Mae Fox; and Billy Grindstead and wife, Jeanette Grindstead.


_____

HOUSTON M. GODDARD, PRESIDING JUDGE