**DUCK RIVER ELECTRIC MEMBER-SHIP CORPORATION, Appellant,**

v.

**CITY OF MANCHESTER, Tennessee, Appellee.**

Supreme Court of Tennessee.

Sept. 15, 1975.

**203**

Gilbert S. Merritt, Jr., Gullett, Steele, Sanford, Robinson & Merritt, Nashville, Edward F. Gordon, Bobo, Gordon & Grissom, Shelbyville, for appellant.

Charles E. Griffith, III, Griffith & Stokes, Nashville, H. Thomas Parsons, City Atty., Manchester, for appellee.

OPINION

HENRY, Justice.

These two civil actions, consolidated for the purposes of appeal, raise two questions, viz:

1. Does the City of Manchester have the right to acquire, by eminent domain, so much of the electric system of Duck River Electric Membership Corporation as is within the boundaries of the city?

2. Assuming the existence of the right, what is the proper measure of damages?

I.

The first suit was instituted by the City of Manchester, seeking to acquire, by eminent domain, certain property owned by Duck River Electric Membership Corporation, located within the corporate limits of the city and used by Duck River as a part of its electric distribution system.

Duck River moved to dismiss, insisting that the city, a municipal corporation, "is not authorized and has not been delegated the right to take property used to supply electric power under the Electric Cooperative Law and may not, therefore, take the property described in the petition, owned by defendant, a public non-profit electric membership corporation organized pursuant to the Electric Cooperative Law, T.C.A. § 65–2501, et seq."

The trial judge overruled the motion to dismiss, holding that the city had authority to acquire so much of Duck River electric distribution system as is located within the city, under the Municipal Electric Plant Law of 1935 (§ 6–1501 et seq., T.C.A.).

This appeal challenges this ruling by assignments which insist that (1) a Tennessee municipality may not condemn the property of an electrical cooperative without demonstrating a public purpose or need and absent a judicial finding that the taking serves such a need, and (2) that a Tennessee municipality is not authorized to condemn, under the general law, the property of an electric cooperative devoted to public use. We treat these assignments as being fairly summarized by the controlling issue as specified at the beginning of this opinion.

## II.

The City of Manchester, the county seat of Coffee County, Tennessee is a municipal corporation organized and existing under the laws of the State of Tennessee.

Duck River Electric Membership Corporation is a public non-profit electric membership corporation organized and existing pursuant to the Electric Cooperative Law, as set forth in § 65–2501 et seq., T.C.A.

The city granted a franchise to Duck River, authorizing the operation of an electric system within the city for a fifteen year period beginning 8 January 1958 and expiring 8 January 1973. This franchise has not been renewed with the result that, as a practical proposition, Duck River continues to serve the city at its sufferance and

the residents of the city are being supplied electricity at the sufferance of Duck River. While the orderly processes of the law would no doubt intervene to prevent the city being thrown into darkness, the fact remains that this arrangement is fragile and lacking in stability.

Under these circumstances the city, on 4 June 1974, after Duck River's franchise had expired, adopted its Ordinance Number 345, declaring that "the prosperity of the City of Manchester will be materially retarded and that it would be detrimental to the welfare of the inhabitants and citizens of the City of Manchester for [them] to continue to be served by the Duck River Electric Membership Corporation"; that they would "be better served by a municipally owned electrical distribution system;" and directing that a condemnation suit be filed.

 The determination by a condemning authority of the necessity for the taking is not a question for resolution by the judiciary and, absent a clear and palpable abuse of power, or fraudulent, arbitrary or capricious action, it is conclusive upon the courts. *Harper v. Trenton Housing Authority*, 38 Tenn.App. 396, 274 S.W.2d 635 (1954); *City of Knoxville v. Heth*, 186 Tenn. 321, 210 S.W.2d 326 (1948). But of course the courts have the right and duty to determine the existence of authority to take, the existence of a legitimate public use and related questions.

Section 6–1505 T.C.A., a part of the Municipal Electric Plant Law of 1935, reads in pertinent part, as follows:

Any municipality proceeding under the provisions of §§ 6–1501—6–1534 is authorized and empowered to condemn any land, easement or rights-of-way, either on, under or above the ground, for any and all purposes necessary in connection with the construction, operation and maintenance of an electric plant or improvements thereto.

 It is self-evident that this statute applies only to real estate. We assume that

the trial judge, in holding that the Municipal Electric Plant Law of 1935 authorized the taking, along with the Revenue Bond Law, had in mind that the former law and the above quoted statute authorized the condemnation of land only, and, on that basis we affirm his holding, as to the availability of this statute; however, in view of § 6–1304, its actual utility is questionable.

Section 6–1304, T.C.A., a part of the Revenue Bond Law reads, in pertinent part:

In addition to powers which it may now have, any municipality shall have power under this chapter:

(1) To construct, acquire by gift, purchase, or the exercise of the right of eminent domain, reconstruct, improve, better cr extend any public works, within or without the municipality, or partially within or partially without the municipality, and to acquire by gift, purchase, or the exercise of the right of eminent domain, lands or rights in land or water rights in connection therewith.

■ In the clearest of language this statute empowers the city to acquire by condemnation, any public works, and land or rights in land, in connection therewith. This is a clear and complete remedy. It is not necessary to rely upon any other statute. It does not provide for the application of the general eminent domain statutes (§ 23–1401 et seq.) as does § 6–1501; however, § 23–1402 makes the general eminent domain statutes "a part of every section, or legislative act, present or future, which grants the power of such condemnation", unless expressly stated to the contrary. Therefore, in this regard, the acts are of identical import.

■ We hold that this condemnation action must be sustained under the provisions of § 6–1304, Tennessee Code Annotated, and we affirm the action of the trial judge in so holding.

Counsel for Duck River earnestly and ably urge upon the Court the proposition that a corporation may not condemn property already devoted to public use by another corporation, and cites, in support of this general rule of law, numerous cases from this and other jurisdictions. We do not fault this as a correct generalized statement of the law.

■ *Railroad Co. v. Cemetery Co.*, 116 Tenn. 400, 94 S.W. 69 (1906) holds, in substance, that property devoted to one public use cannot lawfully be taken for another and inconsistent use without express or applied legislative authority. The inconsistent public use was a railroad right-of-way *vis-a-vis*, a cemetery. This case has no particularized application since the contemplated use in the instant case is not inconsistent and for the further reason that § 6–1304 is a specific grant of authority to municipalities authorizing, as it does, the condemnation of public works (defined by § 6–1302 to include electric plants and systems). Electric systems are seldom privately owned and are always devoted to the public use in the practical sense that they exist to serve substantial segments of the public. The Legislature, therefore, knew that it was authorizing the condemnation by Tennessee municipalities of public service type utility operations engaged in supplying electric current to the public.

*Southern Railway v. Memphis*, 126 Tenn. 267, 148 S.W. 662 (1912) reaffirms *Railroad v. Cemetery Co.* There the suit involved a taking of switch and terminal yards for public park purposes, a wholly inconsistent use.

*Railroad v. Mayor and Aldermen of Union City*, 137 Tenn. 491, 194 S.W. 572 (1917) recognizes that property devoted to a public use may be appropriated to an inconsistent use upon legislative authorization.

*Williamson Co. v. Turnpike Co.*, 143 Tenn. 628, 228 S.W. 714 (1920) recognized the general rule but permitted the county to condemn a turnpike company pursuant to legislative sanction.

Cases from other jurisdictions and textbook authority follow the same general pattern.

There are compelling reasons for holding that a Tennessee municipality has the power to condemn the property of an electrical cooperative within its boundaries.

We look first to the character of the two entities.

In *Memphis v. Laski*, 56 Tenn. 511 (1872) the Court characterized Tennessee municipalities thusly:

> A municipal corporation is created by the government for political purposes, and is vested with subordinate and local powers of legislation. It is an *imperium in imperio*, and can no more be embarrassed in the exercise of the governmental powers with which it is invested for the public good, than can the power creating it.

They exist for the purpose of general government. They are arms or agencies of the state and they exercise, by delegation, a portion of sovereign power for the public good. *Thornton v. Carrier*, 43 Tenn.App. 615, 311 S.W.2d 208 (1957).

Electric membership cooperatives, under Tennessee law, are general welfare corporations. (§ 65–2503 T.C.A.). They are organized to distribute electricity to their members, governmental agencies and political subdivisions with non-members restricted to ten percent (10%) of the number of members. (§ 65–2508). By appropriate by-laws membership qualification and limitations may be imposed. (§ 65–2514).

After the payment of certain expenses and providing for certain reserves, the revenues in each fiscal year may be distributed to its members either as patronage refunds, or by way of rate reductions, or both (§ 65–2516), and upon dissolution among the membership. (§ 65–2525).

A distressing feature of these corporations is their power to refuse service to prospective customers. The pre-eminent mission of public power, and of those charged with its distribution, is to provide the blessings of electricity to the maximum possible extent. The adoption of membership conditions tends to frustrate that purpose. It is a permissible practice but one which should give foremost recognition to the high obligation of public service.

In *Chumbley v. Duck River Elec. Corp.*, 203 Tenn. 243, 310 S.W.2d 453 (1958) this Court was confronted with an action wherein the plaintiff sought to compel Duck River to furnish him with electricity. The Court very properly denied relief, holding that there was no duty to supply electricity to a non-member unless and until he complied with the reasonable rules and regulations (plaintiff insisted they were most unreasonable) of Duck River.

A city electric department can exact no membership requirement and must serve all inhabitants, without discrimination and without the imposition of restrictions and conditions excepting those relating to payment.

While we cast no aspersions upon these corporations and freely and fully recognize the great public service they have rendered in rural and sparsely populated areas of our state, the fact remains that they are manifestly low-grade, volunteer, public service type corporations, inferior in all respects, to municipalities which exist for the purpose of general government. Cities enjoy perpetual succession; there is no provision for their dissolution accompanied by a division of assets. They enjoy a higher degree of permanency and a greater degree of stability.

■ Ample authority supports the position of the city that the property of Duck River is not in "public use." However, this is in context of legal technicalities and niceties. We think a fair appraisal of the services rendered by electric membership corporations demands the conclusion that their facilities are devoted to "public use" in the context of condemnation proceedings. Yet, there can be no legitimate contention but that the city distribution of electric current will be a higher public use.

■ And in the last analysis, a municipality has the exclusive power to control the

distribution of electricity within its boundaries. *Franklin v. Mid. Tenn. Elec.*, 222 Tenn. 182, 434 S.W.2d 829 (1968). This case inferentially holds that the city may take the property of an electric cooperative. See 434 S.W.2d at 833.

In short, as between a Tennessee municipality and an electric membership cooperative, the city is sovereign and supreme.

Manchester may condemn. It will hold the property so acquired for the general public benefit, with a higher and larger scope of use and under a more stable and responsive system.

### III.

The second suit was a declaratory judgment action filed in aid of the condemnation suit and seeking to have the Court declare the proper measure of damages.

The city insisted that § 23–1414, T.C.A., a part of the general condemnation statutes, is applicable; whereas Duck River takes the position that § 6–320 T.C.A. is applicable since the property of an electric membership corporation is involved.

The trial judge held that the damages would be determined by the general condemnation statutes embraced in § 23–1401 et seq. Tennessee Code Annotated.

This appeal ensued.

### IV.

Section 23–1414 provides, in pertinent part:

> In estimating the damages, the jury shall give the value of the land or rights taken without deduction, but incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating incidental damages.

That this is a most imprecise statement of the elements of damages there can be no doubt; however, down through the years the courts have evolved rules for the determination of just compensation.

■ The right to just compensation is decreed by Article 1, Section 21 of the Constitution of Tennessee which provides in substance that no man's property shall be taken without just compensation. This right of compensation existed long before the statutory scheme of condemnation came into being; therefore "such right cannot be said to be created by any such statutes, because the latter are enacted in implementation of the constitutional right already given." *Brooksbank v. Roane County*, 207 Tenn. 524, 341 S.W.2d 570 (1960).

■ Reference to the general condemnation statutes will reveal that they contemplate only the condemnation of land. No reference is made to personal property and yet the constitutional prohibitions against taking private property without just compensation applies with full force and validity to personal property. *Zirkle v. City of Kingston*, 217 Tenn. 210, 396 S.W.2d 356 (1965).

This action seeks to condemn land. It may or may not be improved. It also seeks to condemn personal property including poles, conductors, anchors, guy wires, lightning arresters, transformers, street lights, and numerous other items of equipment used in an electrical distribution system. Technically, some of this may be so attached as to become a part of its realty; however, we treat it as personal property, in accordance with the pleadings, for the purposes of this phase of the controversy.

The general condemnation statutes requiring a jury of view to "examine the ground" and "set apart by metes and bounds, a sufficient quantity of land for the purposes intended" (§ 23–1412 T.C.A.) are ludicrously inapplicable. (It would be difficult to set apart a guy wire by metes and bounds). The standard measure of just compensation, arrived at in the usual manner, is equally unacceptable.

Section 6–1301, T.C.A. under which the city's right to condemn is sustained, is silent as to damages. However, as heretofore

pointed out, the general eminent domain statutes are made a part of all other statutes conferring the power of condemnation by § 23–1402 T.C.A. But this brings us back to an unacceptable measure of damages.

The courts have fashioned appropriate measures of damages without specified guidance from the Legislature. We agree with the insistence of counsel for the city that "the determination of damages is a judicial and not a legislative question." The old case of *Railroad v. Memphis, supra*, instructs us that the question of the sufficiency and adequacy of the procedure for ascertaining damages is a judicial question confided to the courts. We so hold.

The public policy of our state, however, is formulated to a substantial extent by the Legislature, *Home Beneficial Assn. v. White*, 180 Tenn. 585, 177 S.W.2d 545 (1944), and where it has made a positive pronouncement in an area of constitutional concern, we hesitate not to carry out its obvious intent.

The Legislature has arrived at a formula or method for determining the fair market value or just compensation to be paid the owner in these cases involving the acquisition of public entities.

Section 6–320 reads, in part as follows: (2) Municipality shall offer to purchase the electric distribution properties of the cooperative located within the annexed area, together with all of the cooperative's rights to serve within such area, for a cash consideration which shall consist of (a) the present-day reproduction cost, new, of the facilities being acquired, less depreciation computed on a straight-line basis; plus (b) an amount equal to the cost of constructing any necessary facilities to reintegrate the system of the cooperative outside the annexed area after detaching the portion to be sold; plus (c) an annual amount, payable each year for a period of ten (10) years, equal to the sum of (i) twenty-five per centum (25%) of the revenues received from power sales to consumers of electric power within the annexed area, except consumers with large industrial power loads greater than 300 kilowatts, during the last twelve months preceding the date of the notice provided for in (1) above, and (ii) fifty per centum (50%) of the net revenues (gross power sales revenues less wholesale cost of power including facilities rental charge) received from power sales to consumers with large industrial power loads greater than 300 kilowatts within the annexed area during the last twelve (12) months preceding the date of the aforesaid notice.

We hold this to be a fair and equitable method of determining just compensation as mandated by our Constitution.

In arriving at this conclusion we have not found it necessary to determine whether the City of Manchester is an "annexing municipality" within the meaning of § 6–320 and we have not overlooked the fact that Manchester does not presently own or operate its own electric system. In our view these are not controlling considerations. We are motivated by the fact that the Legislature has found and determined this to be a proper manner for determining "just compensation" or "fair market value." We cannot bring ourselves to believe that the Legislature would allow one measure of compensation for annexed utilities and another for those acquired by condemnation. Nor would we.

We realize that we have probably approved a liberal measure of damages, but we think Duck River is entitled to liberal consideration. The City of Manchester has been the beneficiary of its service for a long period of time. Duck River, no doubt, extended its services and facilities to accommodate Manchester residents and their withdrawal will doubtless have an adverse effect upon surcharges, rates and reserves.

This case (13094) is reversed and remanded with instructions to the trial

judge to try the issues as if this were an inverse condemnation suit, applying the measure of damages as above delineated. We eliminate the jury of view in this particular case as being unproductive and inappropriate.

The costs of these appeals will be borne equally by the parties.

In accordance with Rule 7, of this Court, the costs of the Circuit Court Clerk are disallowed to the extent of unnecessary duplications in the two transcripts filed in this Court. The Clerk of this Court will compute the exceptions.

COOPER and BROCK, JJ., and LEECH, Special Justice, concurring.

HARBISON and FONES, JJ., not participating.

### ON PETITION TO REHEAR

The City of Manchester has filed a petition to rehear and for clarification.

We held:

a. That the City of Manchester has the right to condemn.

b. That the damages would be determined in accordance with § 6–320 T.C.A.

c. That on remand the trial judge would try the issues *as if* this case were an inverse condemnation suit, with the jury of view eliminated.

Condemnation had not been completed and we did not so hold. The City may proceed with the suit or it may dismiss, at its option. It may construct its own system or it may franchise a competing system, or it may exercise numerous other options and alternatives. But if it elects to continue, the measure of damages and method of their ascertainment are as herein fixed.

The petition is

Overruled.

LEECH, Special Justice, and COOPER and BROCK, JJ., concurring.

HARBISON, J., not participating.