**KNOXVILLE UTILITIES BOARD,**
Plaintiff–Appellee,

v.

**LENOIR CITY UTILITIES BOARD,**
Defendant–Appellant.

Court of Appeals of Tennessee.

Aug. 20, 1996.

Permission to Appeal Denied by
Supreme Court Jan. 6, 1997.

Terry G. Vann, City Attorney, Lenoir City, Robert B. Littleton, Amanda Haynes Young, Trabue, Sturdivant & DeWitt, Nashville, for Appellant.

Robert R. Campbell, James M. Cornelius, Jr., Hodges, Doughty & Carson, Knoxville, for Appellee.

## OPINION

CLIFFORD E. SANDERS, Special Judge.

The only issue on appeal of this declaratory judgment suit is whether the taking by the City of Knoxville's Utilities Board of the properties of the Lenoir City's Utilities Board, used for the sale and distribution of electricity in an area annexed by the City of Knoxville, is governed by TCA § 6–51–111 or TCA § 6–51–112. We affirm the holding of the trial court that it is governed by § 6–51–111.

The Plaintiff–Appellee, Knoxville Utilities Board, (KUB) is a municipal utility established pursuant to the charter of the City of Knoxville. Defendant–Appellant Lenoir City Utilities Board (LCUB) is a municipal utility established pursuant to the charter of the City of Lenoir City. Neither the Plaintiff nor the Defendant is an electric cooperative.

Between 1986 and 1990, the City of Knoxville annexed certain properties adjacent to its city limits on which the business establishments and residences were served with electricity by LCUB. In 1993 KUB notified LCUB of its intention to take over the provision of electrical service to the customers being served by LCUB in the territory annexed by the City of Knoxville, pursuant to TCA § 6–51–111.

LCUB did not dispute the right or authority of KUB to take over the electrical service to the customers or its electrical distribution facilities located within the city limits. It contended, however, the taking was not governed by TCA § 6–51–111, but KUB was required to compensate it for the taking as provided in TCA § 6–51–112, and that precipitated this litigation.

KUB filed a declaratory judgment suit pursuant to TCA § 29–14–101, et seq., and Rule 57, TRCP, asking the court to declare the parties' respective rights pursuant to TCA § 6–51–111 and § 6–51–112.

The trial court found the issues in favor of KUB, and LCUB has appealed, saying the court was in error. We affirm the holding of the trial court that the rights of the parties are governed by TCA § 6–51–111 and not § 6–51–112. We remand, however, for further proceedings pursuant to TCA § 6–51–111. TCA § 6–51–111 (1995 Supp.), as pertinent, provides:

(a) Upon adoption of an annexation ordinance or upon referendum approval of an annexation resolution as hereinabove provided, an annexing municipality and any affected instrumentality of the state of Tennessee, including, but not limited to, a utility district, sanitary district, school district, or other public service district, shall attempt to reach agreement in writing for allocation and conveyance to the annexing municipality of any or all public functions, rights, duties, property, assets and liabilities of such state instrumentality that justice and reason may require in the circumstances. Any and all agreements entered into before March 8, 1955, relating to annexation shall be preserved. The annexing municipality, if and to the extent that it may choose, shall have the exclusive right to perform or provide municipal and utility functions and services in any territory which it annexes, notwithstanding § 7–82–301 or any other statute, subject, however, to the provisions of this section with respect to electric cooperatives.

(b) Subject to such exclusive right, any such matters upon which the respective parties are not in agreement in writing

within sixty (60) days after the operative date of such annexation shall be settled by arbitration with the laws of arbitration of the state of Tennessee effective at the time of submission to the arbitrators, and § 29–5–101(2) shall not apply to any arbitration arising under this part and § 6–51–301. The award so rendered shall be transmitted to the chancery court of the county in which the annexing municipality is situated, and thereupon shall be subject to review in accordance with §§ 29–5–113—29–5–115 and 29–5–118.

(c)(1) If the annexed territory is then being provided with a utility service by a state instrumentality which has outstanding bonds or other obligations payable from the revenues derived from the sale of such utility service, the agreement or arbitration award referred to above shall also provide that:

(A) The municipality will operate the utility property in such territory and account for the revenues therefrom in such manner as not to impair the obligations of contract with reference to such bonds or other obligations; or

(B) The municipality will assume the operation of the entire utility system of such state instrumentality and the payment of such bonds or other obligations in accordance with their terms.

(2) Such agreement or arbitration award shall fully preserve and protect the contract rights vested in the holders of such outstanding bonds or other obligations.

(d)(1) Notwithstanding the provisions of any law to the contrary, if a private individual or business entity provides utility service within the boundaries of a municipality under the terms of a privilege, franchise, license, or agreement granted or entered into by the municipality, and if the municipality annexes territory which includes the service area of a utility district, then such private individual or business entity and the utility district shall attempt to reach agreement in writing for allocation and conveyance to such private individual or business entity of any or all public functions, rights, duties, property, assets, and liabilities of such utility district that justice and reason may require in the circumstances. If an agreement is not reached, then notwithstanding the change of municipal boundaries, the service area of the utility district shall remain unchanged, and such private individual or business entity shall not provide utility service in the service area of the utility district.

TCA § 6–51–112, as pertinent, provides as follows:

(a) Notwithstanding the provisions of any other statute, if the annexing municipality owns and operates its own electric system, it shall either offer to purchase any electric distribution properties and service rights within the annexed area owned by any electric cooperative, or grant such cooperative a franchise to serve the annexed area, as hereinafter provided:

(1) The municipality shall notify the affected electric cooperative in writing of the boundaries of the annexed area and shall indicate such area on appropriate maps.

(2) The municipality shall offer to purchase the electric distribution properties of the cooperative located within the annexed area, together with all of the cooperative's rights to serve within such area, for a cash consideration which shall consist of:....

The statute then enumerates in detail the various factors to be considered in fixing the amount the municipality shall pay the cooperative for its distribution properties.

The parties entered into the following stipulation of facts, which appears to be the only evidence offered upon the hearing of the case: "The parties, by and through counsel, agree to the following stipulation of fact with respect to the captioned matter....:

"The plaintiff, Knoxville Utilities Board ( ... 'KUB'), is a municipal utility established pursuant to Article XI of the Charter of the City of Knoxville, Tennessee and is not an electrical cooperative.

"The defendant, Lenoir City Utilities Board ( .... 'LCUB'), is a municipal utility established pursuant to the Charter of the City of Lenoir City, Tennessee, and is not an electrical cooperative.

"Both KUB and LCUB operate under the provisions of their respective city charters as well as under applicable provisions of state law.

"Both LCUB and KUB have the authority and responsibility for the purchase, production and distribution of electricity, water and natural gas, as well as management of the sanitary sewer system within the corporate limits of their respective cities, as well as in certain areas of the counties in which their cities are located and in adjacent surrounding counties outside the corporate limits of their respective cities.

"KUB has the right to bring suit in its own name.

"Between 1986 and 1990, the City of Knoxville approved Ordinance[s] ... annexing four separate parcels of real property lying contiguous to the corporate boundary of the City of Knoxville in an area north of Kingston Pike and west of Ten Mile Creek at the intersection of North Peters Road and Kingston Pike constituting a shopping center known as 'The Commons'.

"The aforementioned annexation Ordinances were duly passed and approved by the City of Knoxville, incorporating the area known as 'The Commons' into the City of Knoxville. The contents of such annexation ordinances speak for themselves; however, such ordinances do not address in detail the provision of electrical service in the annexed areas.

"LCUB has supplied electrical services to the businesses and residents of the subject annexed areas for a number of years prior to the annexation and up to the present time. The electrical distribution equipment used to supply the electrical services within the subject area is owned by LCUB.

"KUB has the exclusive right to provide electrical services to the subject annexed areas or to grant a franchise for the provision of electrical services in the subject annexed areas.

"KUB has notified LCUB that, pursuant to the provisions of T.C.A. § 6–51–111, it is KUB's intention to take over the provision of electrical services in the subject annexed areas with compensation to LCUB as prescribed by T.C.A. § 6–51–111.

"LCUB has notified KUB of its position that it is entitled to compensation for its electrical distribution properties in the annexed area in accordance with the 'Co-op rule' prescribed in T.C.A. § 6–51–112."

It is the insistence of KUB, that the City of Knoxville is a state municipality which operates its electrical utility service through KUB which is a state instrumentality and Lenoir City is a state municipality operating its electrical utility service through LCUB which is a state instrumentality. Therefore, since it is a municipality taking over the public services and distribution facilities of another state instrumentality, there is no common law or statutory law requirement under § 6–51–111 for it to compensate LCUB for its distribution facilities within Knoxville's city boundaries.

It is the insistence of LCUB, however, that § 6–51–111 is procedural in nature only and must be construed with § 6–51–112 and that, although it is a state instrumentality, KUB is without authority to take its distribution equipment located within the boundaries of the City of Knoxville without just compensation to be determined by the terms of § 6–51–112 for electric cooperatives.

No provision of our state's constitution is better known in our jurisprudence than Article I, Section 21, which provides: "No man's services or property shall be taken without consent or just compensation". That provision of the constitution, however, has been held not to be applicable to the proprietary rights of municipal corporations in public grounds within its territorial limits.

The general rule relating to property held in a public or governmental capacity

is stated in 56 Am.Jur., Municipal Corporations § 120, as follows:

> The power of the legislature over the property which a municipal corporation has acquired in its public or governmental capacity, and devoted to public or governmental uses, is so complete that a municipality in dealing with public property is subject to such restrictions and limitations as the legislature may impose. The legislature may take the control of such property from the officers of the corporation and turn it over to other officers under the more direct supervision and control of the state. The state may, at its pleasure, modify or withdraw the power to hold and manage property, or take such property without compensation....

§ 534 states:

> Generally, a municipal corporation has no proprietary rights in public grounds within its territorial limits; whatever rights it has in them are held merely in trust for the public. It has also been held that a municipal corporation is, as to property acquired by it in its proprietary capacity, a trustee for the inhabitants of the territory embraced within its limits. Under constitutional and statutory provision that all public improvements and municipally owned utilities are public property with title vested not in the municipality as a corporate entity, but in the public, it follows that the municipality in its corporate capacity strictly speaking does not own such improvements and utilities, and has no title to them. They are owned by the public.

The landmark case in this jurisdiction which announced the common law rule that the public property held by one state instrumentality would pass to the control of an annexing municipality when brought within the boundaries of such annexing municipality is *Prescott v. Town of Lennox*, 100 Tenn. 591, 47 S.W. 181 (1898). In *Prescott*, a school building had been built on a tract of land belonging to the Eighteenth School District of Shelby County. In 1896 the property was taken into the corporate boundaries of the town of Lennox. The school board for the Eighteenth School District filed suit against the town of Lennox and its board of education seeking to enjoin them from interfering with its control over the school property. The trial court found the issues in favor of the plaintiffs. Our supreme court reversed, saying, "We think the great weight of authority is to the effect that upon the division of a municipality, in the absence of legislative regulations, each portion will hold in severalty, for public purposes, the public property which falls within its limits." *Id.* 592, 47 S.W. 181. (Citations Omitted). The court further said:

> Municipal corporations are called into being in the interest of the public, and, in order that they may better subserve their purpose, they have the right to create and control all the agencies and appliances essential to the health, safety, and convenience of the communities constituting them. These agencies and "appliances, whether engine house, ... schoolhouse, ... hydrants, or sewers, are so distributed as to be of the most efficient service to the public. They are brought into existence to be so used. Now, when the territorial limits of a corporation are diminished by excision of a part of its territory, the power of control of the public agent over their appliances," we think, must be "restricted to the newly defined limits of the corporation,...."

Also *see Hamilton County v. City of Chattanooga*, 203 Tenn. 85, 310 S.W.2d 153 (1958) and *State ex rel. Spoone v. Mayor and Aldermen of Morristown*, 222 Tenn. 21, 431 S.W.2d 827 (1968).

The Tennessee General Assembly enacted what is now TCA § 6–51–111(a) and (b) in 1955 and what is now § 6–51–111(c) in 1957. It enacted what is now TCA § 6–51–112 in 1968. We have been cited to no cases, however, nor have we found any in this jurisdiction, which has required an annexing municipality to compensate another municipal entity in accordance with § 6–51–112 for public property brought into the city's boundary by annexation.

TCA § 6–51–111 governs the rights of the parties where the territory annexed by the annexing municipality affects an "instrumentality of the state of Tennessee, such as, but not limited to, a utility district, sanitary district, school district, or other public service district." Also, the statute makes no provision for or requirement that the annexing municipality compensate the instrumentality of the state for its public property within its boundaries. TCA § 6–51–112 provides, however, as pertinent: "[I]f the annexing municipality owns and operates its own electric system, it shall either offer to purchase any electric distribution properties and service rights within the annexed area owned by any *electric cooperative*, or grant such cooperative a franchise to serve the annexed area." (Emphasis ours.)

■ Although LCUB is an instrumentality of the state, it objects to being subject to the provision of TCA § 6–51–111 and insists it should be cast in the classification of an electric cooperative and compensated according to the provisions of TCA § 6–15–112 for electric cooperatives. It cites the following cases as supportive of its insistence: *Duck River Electric Membership Corp. v. City of Manchester*, 529 S.W.2d 202 (Tenn.1975); *Electric Power Board v. Middle Tenn. Electric Membership Corp.*, 841 S.W.2d 321 (Tenn.App.1992); and *Forked Deer Electric Co-op. v. Ripley*, 883 S.W.2d 582 (Tenn. 1994). We find LCUB's reliance on these cases to be misplaced. None of these cases addresses the issue of an annexing municipality compensating another instrumentality of the state for public property located within the boundaries of the annexing municipality.

The decree of the chancellor in holding "KUB's acquisition of LCUB's distribution facilities are [sic] not controlled by the provision of TCA § 6–51–112 and thus LCUB is not entitled to be compensated on the basis of the 'co-op rule' " is affirmed. We also hold the rights of the parties are controlled by TCA § 6–51–111.

The court takes no position on the other issues and the case is remanded to the trial court for further proceedings on all necessary matters pertaining to TCA § 6–51–111.

The cost of this appeal is taxed to LCUB.

GODDARD, P.J. and FRANKS, J., concur.